# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| THE CITY OF BERKELEY, MISSOURI, on behalf of the Municipal Corporation and its Citizens, and WILLIE MAE ANTHONY as next friend for her grandchildren JM and EP, and JOHNETTA ROBINSON as next friend for her daughter BR, and ANDREA MCCAIN as next friend for her children MH and AM, and CHARVAN JAMERSON as next friend for her son MT, and LISA WILLIS as next friend for her son KJ and her niece DM, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 4:19-cv-00168-RLW |
| v. | ) ) | |
| FERGUSON-FLORISSANT SCHOOL DISTRICT, | ) ) ) ) | |
| and | ) ) | |
| ROBERT CHABOT, SCOTT EBERT, LESLIE HOGSHEAD, and JESSICA PONDER, in their official capacities only, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## SUGGESTIONS IN SUPPORT
## OF TEMPORARY RESTRAINING ORDER

The question before the court is exceedingly simple: should a school district be allowed to irreparably harm a city and its citizens by arbitrarily and capriciously going against the will of the people by selecting an unpopular plan for closing and reorganizing schools. For the reasons stated the balancing of equities and the public interest dictates that a Temporary Restraining

Order must be granted to preserve the status because the Plaintiffs have no adequate remedy at law and possess a remarkable probability of prevailing at trial.

## STANDARD OF REVIEW

For the purpose of granting temporary or preliminary relief, this court must consider: 1) the threat of irreparable harm to the Plaintiffs; 2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; 3) the probability that the Plaintiffs will succeed on the merits; and 4) the public interest.  *Dataphrase Sys., Inc. v. C L Sysl, Inc.*  640 F.2d 109, 114 (8th Cir. 1994).  The Plaintiffs do not even need to show a "fifty percent chance of success on the merits."  *PCTV Gold, Inc. v. SpeedNet, LLC,*  508 F.3d 1137, 1143 (8th Cir. 2007).  Once Plaintiffs demonstrate this likelihood of success on the merits, this court may presume that they have been irrepably harmed.  *Calvin Klein Cosmetic Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 505 (8th Cir. 1987).

Here, every one of the relevant factors supports Plaintiffs' request for entry of a temporary restraining order and preliminary injunction to preserve the *status quo* and to protect Plaintiffs from ongoing irreparable injury attributable to the conduct of Defendants.

## ARGUMENT

**I.   Plaintiffs will be irreparably harmed if Defendants are allowed to proceed with the school closings and reorganization.**

Plaintiffs have preliminarily set forth uncontradicted facts supporting their allegations that they will be irreparably harmed.  The closings and reorganization will cause the City of Berkeley and its citizens to have lower property values and a corresponding lower tax base. A lower tax base means less revenue and a reduction in city services.  Parents who moved into areas so that their children can attend neighborhood schools will be forced to have their children's educational disrupted as they are shipped to other schools.

2

The court should issue a temporary restraining order because the specific facts in the verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the Plaintiffs. *Federal Rule of Civil Procedure 65*. Applications for temporary restraining orders and preliminary injunctive relief are measured against the factors set forth in *Dataphase*. Those factors are:

> Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the plaintiff; (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.
> *Id.* at 113.

The inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* Plaintiffs, through their Verified Complaint, have satisfied their prima facie burden of establishing the necessity of a temporary restraining order and preliminary injunctive relief is on the party seeking relief. *Baker v. Electric Co-op, Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994); *United States v. Dorgan,* 522 F.2d 969, 973 (8th Cir.1975). This Court should exercise its broad discretion in ruling on this requests for a temporary restraining order and preliminary injunction. *Entergy, Arkansas, Inc. v. Nebraska,* 210 F.3d 887, 898 (8th Cir.2000).

Plaintiffs are entitled to injunctive relief, because they have shown that irreparable harm is *likely*, not merely possible, in the absence of an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010). The Court may "find a likelihood of irreparable harm based on general

3

principles," and "[p]art of the district court's discretion is assessing whether an alleged harm requires more substantial proof." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319-320 (8th Cir. 2009).

Having determined that Plaintiffs are likely to be harmed if injunctive relief is not granted, the Court must now consider whether such harm would be irreparable. As to the issue of whether potential harm to the City of Berkeley, Missouri, its citizens and the individual Plaintiffs would amount to irreparable harm, the Court must find that it would, at the very least, be difficult to calculate the monetary loss associated with the closing and reorganizing of schools. There is no theory of recovery that would permit Plaintiffs to recover for the potential harm at issue, and the Court can conceive of none on its own. Having no colorable theory of recovery, the Court must find that a harm of this nature would not be reparable by money damages. *See Fogie v. THORN Americas, Inc.*, 95 F.3d 645, 654 (8th Cir. 1996) (finding irreparable harm where "[e]stimating future losses ... is virtually impossible"). As such, the Court should be satisfied that Plaintiffs would likely suffer irreparable harm if Defendants are not enjoined from closing and reorganizing the schools.

In other words, irreparable harm is established if monetary remedies cannot provide adequate compensation for improper conduct. *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010). Therefore, irreparable harm is certain and imminent such that there is a clear and present need for equitable relief. *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir.1996). This case does not involve possible or speculative harm which would not be sufficient. See *Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone / Firestone, Inc.*, 61 F.3d 1347, 1355 (8th Cir. 1995). Furthermore, the remedy at law is inadequate here. *Gen. Motors Corp. v. Harry Brown', LLC*, 563 F.3d 312, 319 (8th Cir.

4

2009). Our Supreme Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies. *Rondeau* v. *Mosinee Paper Corp.,* 422 U.S. 49, 61 (1975); *Sampson* v. *Murray,* 415 U.S. 61, 88 (1974); *Beacon Theaters, Inc.* v. *Westover*, 359 U.S. 500, 506-507 (1959).

II. **The balance of equities so favors Plaintiffs that justice requires the Court to intervene to preserve the status quo until the merits are determined.**

Where plaintiff and defendant present competing claims of injury, the traditional function of equity has been to arrive at a "nice adjustment and reconciliation" between the competing claims, *Hecht Co.* v. *Bowles, 321 U.S. 321, 329* (1944). In such cases, the court "balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Yakus* v. *United States,* 321 U.S. 414, 440 (1944). "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Hecht, supra,* at 329.

As a general matter it may be said that "[s]ince all or almost all equitable remedies are discretionary, the balancing of equities and hardships is appropriate in almost any case as a guide to the chancellor's discretion." *D. Dobbs, Remedies* 52 (1973). Here, the balance of hardships weighs in favor of Plaintiffs. The immediate injury to the City of Berkeley, Missouri, its citizens and businesses, and the named individual Plaintiffs greatly outweighs any potential harm that the proposed relief may cause Defendants. Any harm to Defendants is self-inflicted. *See, e.g., Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011). They were the ones who deliberately implemented this discriminatory plan.

Undoubtedly, Defendants disagree with Plaintiffs' assertion that their actions were deliberately undertaken to violate Plaintiffs' constitutional rights based on their race. Defendants

5

will argue that the decision to close and reorganize schools were based on a desire to save money.  That's all Defendants have at stake here:  the desire to save money.

In other words, if this Court grants the Temporary Restraining Order and Preliminary Injunction the worst scene scenario if the permanent injunction is not granted is that the School District lose some money.  On the other hand, if the Temporary Restraining Order and Preliminary Injunction is not granted even if Plaintiffs succeed in obtaining the Permanent Injunction at trial the resulting irreparable harm will be irreversible.

.   Ms.  Debra M. Irvin is the City Manager of Berkeley, Missouri.  There are a number of applications for building permits pending for new homes to be constructed in Berkeley, Missouri.  In her professional opinion, there is a high risk that developers may change their minds and take their projects elsewhere as a result of the school closings and reorganization. *Verified Complaint and Application for Injunctive Relief ("Complaint"), paragraph 23.*

The closings and reorganization will leave Berkeley, Missouri without a single school that serves children grades kindergarten through middle school. *Id., paragraph 24.*Even Berkeley, Missouri residents without school-aged children would be irreparably harmed and adversely affected.  The reorganization would result in a lowering of the property values of Berkeley, Missouri immediately, irreparably, and permanently damaging all of those who own property in Berkeley. *Id., paragraph 25.*

Equity, in a broad jurisprudential sense, means power to do justice in a particular case by exercising discretion to mitigate the rigidity of strict legal rules.  Here, the balancing of the contrasting interest between Plaintiffs and Defendants, saving a community vs. saving money requires authorizing the injunctive relief. See, *e.g., Amoco Production Co. v. Gambell,* 480 U.S. 531, 545, (1987).

6

In balancing the equities no single factor is determinative. *Dataphrase*, p. 113. The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. *Id.*

**III. There is a substantial likelihood that Plaintiffs will succeed on the merits at trial given the extreme egregiousness of Defendants' policies and practices.**

Defendants have intentionally made a decision that will have a negative affect the African American residents living in the City of Berkeley, Missouri.  They did so even though some of their own Directors expressed the guaranteed harm on the record.

At the Ferguson-Florissant Board meeting conducted on October 10, 2018 one of the Board members, Dr. Donna Paulette-Thurman said she has performed her due diligence and she knows that the more transitions that a student goes through the more likely they are to fall behind socially, emotionally, and academically, especially for children in lower economic levels. Having children in a variety of grade levels attending different schools will be a hardship for the parents.  The closings and reorganization will make it possible for parents to have children in four different schools at one time which present a challenge for children to watch out for and care for their siblings. *Complaint, paragraph 32.*

Berkeley, Missouri will be irrepably harmed because it will lose a grade school, a middle school, and a full service high school. She stated that she was a retired Principal, and this was not the first time that she has made her position known to the Board, and she too was in favor of taking more time to explore all of the options. She said that there was no reason why the vote had to be cast right away because there was going to be too much change with too many questions remaining and there is not enough community support.  She said, "Haste makes waste, sometimes.  Look at us; we are not on the same page.  That tells me that something is wrong.  We need to go back, take a deep breath and take a little time and go back and talk.  I am not

7

saying put it off for a year…..There is something not right here you guys, there is something not right." *Id.*

Defendants heinous disregard of the rights of the citizens of Berkeley will make it more likely than not that Plaintiffs will be successful at trial thus supporting granting both the Temporary Restraining Order and Preliminary Injunction.

**IV.     The public interest requires the issuance of injunctive relief.**

In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Railroad Comm'n* v. *Pullman Co.,* 312 U.S. 496, 500 (1941).  Here, Defendants want to close neighborhood schools which will lead to the destabilization of the Berkeley, Missouri community.  *Complaint, paragraph 16.*

The public interest is to not act rashly.  Once the Defendants proceed, there is no way to undo the damage and no way to compensate for it.  Where likelihood of success on the merits and irreparable harm are clear, issuing an injunction necessarily serves the public good. It is in the public interest for this Court to maintain the status quo, at least until a proper injunction hearing may be held and the Plaintiffs' claims may be properly considered and adjudicated. The stakes and the public interest are just too great to decide otherwise. For these reasons, the public interest is best served by a temporary restraining order enjoining the Defendants from carrying out any additional actions regarding school closings or reorganization.

                            **BANKS LAW LLC**

                            */s/ Eric Kendall Banks*
                            Eric Kendall Banks, #28655
                            308 North 21st Street, Suite 401
                            St. Louis, Missouri  63103
                            314-583-7075
                            302-365-2789 (E-Fax)
                            ericbanks@bankslawllc.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on April 1, 2019, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:  City R. Ormsby and Edward J. Sluys, Curtis, Heinz, Garrett & O'Keefe, Attorneys for Defendant, 130 South Bemiston, Suite 200, Clayton, Missouri  63105.

                                                              /s/ Eric Kendall Banks